UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL N., *Individually and as Guardians Ad Litem of their minor child, R.N.*, and MISHA N., *Individually and as Guardians Ad Litem of their minor child, R.N.*,

                             **Plaintiffs,**

   vs.                                          6:24-cv-804
                                                  (MAD/MJK)

**THE WHITESBORO CENTRAL SCHOOL DISTRICT and THE WHITESBORO BOARD OF EDUCATION,**

                             **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**COOPER ERVING & SAVAGE LLP**       **CARLO C. DE OLIVEIRA, ESQ.**
20 Corporate Woods Boulevard – Suite 501
Albany, New York 12211
Attorneys for Plaintiffs

**HANCOCK ESTABROOK, LLP**          **FRANK W. MILLER, ESQ.**
1800 AXA Tower I                                **LINDSEY H. HAZELTON, ESQ.**
100 Madison Street
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action on June 24, 2024, asserting claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504), and common law negligence. *See* Dkt. No. 1. The complaint alleges that Defendants The Whitesboro Central School District (the "District") and The Whitesboro Board of Education (the "Board of Education") discriminated against the Infant Plaintiff, R.N., by failing to

provide R.N. with reasonable accommodations and/or meaningful access to public education by reason of R.N.'s disability. *See id.* The complaint further alleges that Defendants failed to train and/or supervise their agents and/or employees whose conduct caused R.N. to suffer physical and emotional abuse while under Defendants' care and control. *See id.*

Defendants were properly served under Rule 4 of the Federal Rules of Civil Procedure on July 9, 2024. *See* Dkt. Nos. 5 & 6. Defendants failed to timely answer or otherwise move. Accordingly, on August 1, 2024, Plaintiffs requested an entry of default, which the Clerk of the Court entered on the following day. *See* Dkt. Nos. 8 & 9. On August 5, 2024, Plaintiffs moved for default judgment. *See* Dkt. No. 11.

On August 14 and 19, 2024, counsel for Defendants appeared in this action. *See* Dkt. Nos. 12 & 13. Thereafter, on August 26, 2024, Defendants filed a cross-motion to vacate the default, which Plaintiffs have opposed. *See* Dkt. Nos. 14 & 15.

For the reasons set forth below, Defendants' cross-motion to vacate the default is granted and Plaintiffs' motion for default judgment is denied.

## II. DISCUSSION

**A.  Standard of Review**

Under Rule 55(c) of the Federal Rules of Civil Procedure, a court "may set aside an entry of default for good cause" prior to an entry of final judgment. In deciding whether to vacate an entry of default, "the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *see also United States v. Starling*, 76 F.4th 92, 100 (2d Cir. 2023). "The factors a court considers when deciding whether

2

to set aside a Certificate of Default or a default judgment are the same, but 'courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated.'" *Ramsaran v. Abraham*, No. 15-cv-10182, 2017 WL 1194482, *9 (S.D.N.Y. Mar. 30, 2017) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).

A motion to vacate the entry of default is "addressed to the sound discretion of the district court." *McNulty*, 137 F.3d at 738. However, the Second Circuit "generally disfavor[s]" default judgment and has expressed a "preference for resolving disputes on the merits." *Enron Oil*, 10 F.3d at 96; *accord Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits"). Therefore, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also Starling*, 76 F.4th at 100 ("[C]ourts addressing motions to set aside default under Rule 55(c) are extremely forgiving to the defaulting party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps") (quotation marks and citation omitted).

**B.     Application**

In their cross-motion, Defendants explain that Sarah Lowman is a claims adjuster for Defendants' insurance carrier, Utica National Insurance Company, and that her responsibilities include acknowledging receipt of various legal matters, including notices of claim and summonses and complaints. *See* Dkt. No. 14-1 at 3. Much of her communication with customers is via email. *See id.*

Ms. Lowman was on an extended vacation abroad from June 30, 2024, to July 18, 2024. *See id.* Per her standard practice, she posted an "away" message on her email account notifying

persons who would communicate by email that she was out of the office and would not have access to her email. *See id.* at 3-4. The out-of-office message further encouraged the sender to contact one of Ms. Lowman's Utica National co-workers in the event they needed immediate response or immediate assistance. *See id.* at 4. Ms. Lowman also left a similar away message on her voicemail.

On July 9, 2024, when the summons and complaint were personally served upon Defendants, District Secretary Kimberly Bunal sent notice of the suit, via email, to Ms. Lawson that same day. *See id.* Ms. Bunal also sent notice to outside counsel for the School District, Attorney Jennifer Mathews, Esq., of the Ferrara Fiorenza Law Firm. *See id.* Ms. Bunal did not take any further action in response to Ms. Lowman's out-of-office email and, as such, no one at Utica National received notice of the litigation at that time. *See* Dkt. No. 14-6 at ¶ 7. When Ms. Lowman ultimately saw the email from Ms. Bunal, days after returning from vacation, she erroneously concluded that Ms. Bunal had followed the directive in the out-of-office email and followed up with one of Ms. Lowman's co-workers. *See id.* at ¶ 8.[1]

On August 2, 2024, two days after the July 30, 2024, response date, Plaintiffs' counsel applied for entry of default. *See* Dkt. No. 8. The motion for default judgment was filed on August 5, 2024. *See* Dkt. No. 11.

---

[1] On or about June 30, 2024, Defendants and Utica National received a notice of claim served by the same litigants concerning the same claims on behalf of R.N. The notice of claim was promptly processed by Utica National and turned over to Attorney Frank W. Miller, of Hancock Estabrook, LLP, to conduct the appropriate Section 50-h examination. Mr. Miller sent the 50-h examination notice to Plaintiff's counsel on July 8, 2024, and the same was preliminarily scheduled for August 12, 2024. At the request of Plaintiff's counsel, Carlo de Oliveira, of Cooper Erving & Savage, LLP, the exam was rescheduled. Plaintiff's counsel did not, however, inform Mr. Miller that this lawsuit had been filed or that he had just recently served Defendants with the complaint.

On August 7, 2024, Attorney Mathews informed Ms. Lowman that an application for a default judgment had been made. Upon learning of the situation, Ms. Lowman promptly notified her supervisor who direct that the matter be reviewed internally, and subsequently assigned the matter to a different Utica National adjuster. On August 13, 2024, Utica National referred the matter to Attorney Miller, who filed a notice of appearance in this case the following day. *See* Dkt. No. 12. On August 14, 2024, Defendants' counsel left a voicemail for Plaintiffs' counsel attempting to rectify the default in this matter. When Plaintiffs' counsel did not respond, Defendants' counsel sent Plaintiffs' counsel a letter, asking him to re-evaluate the matter and seeking to work collaboratively to secure a withdrawal of the motion for default. *See* Dkt. No. 14-3. On August 19, 2024, Plaintiffs' counsel refused in writing. On August 26, 2024, Defendants filed their cross-motion to vacate the entry of default. *See* Dkt. No. 14.

These facts clearly demonstrate that Defendants' cross-motion to vacate must be granted. First, Defendants' default in this matter occurred because of a failure of communication. Ms. Lowman did not anticipate that her out-of-office message directing clients to consult with her colleagues would not be followed. Once Attorney Mathews informed Ms. Lowman that an application for default judgment had been made, all parties acted swiftly to address the situation. Once retained, Defendants' counsel promptly attempted to resolve this matter with Plaintiffs' counsel and, when that failed, filed the present motion. Based on this record, the Court finds that Defendants' conduct does not rise to the level of willfulness and, therefore, this factor favors setting aside the entry of default.

The second factor also weighs in favor of setting aside the entry of default because there is no prejudice to Plaintiffs. Plaintiffs note that this case alleges that Defendants have failed to provide necessary services to a disabled child, without which the child is unable to have a

5

meaningful access to an education as required by federal law. *See* Dkt. No. 15 at 15. Plaintiffs contend that "[e]very day that passes that the minor plaintiff is abused and discriminated against by defendants, is another day that this disabled child will be denied a meaningful access to an education." *Id.* at 15-16.

While the Court understands Plaintiffs' position, the Court finds that this is not the type of prejudice the Court must assess when deciding whether to vacate an entry of default. Rather, to establish prejudice, the plaintiff "must demonstrate 'that the delay will result in the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion.'" *Knox on behalf of D.K. v. Poughkeepsie City Sch. Dist.*, No. 17-cv-8190, 2022 WL 305275, *4 (S.D.N.Y. Feb. 2, 2022) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Plaintiffs have failed to allege any such prejudice. Moreover, the delay in responding to this action was exceedingly brief, with Defendants' counsel filing a notice of appearance within days of being retained by Utica National.

Finally, the third factor also weighs in favor of vacating the default. A defendant seeking to set aside an entry of default bears the "burden of offering evidence sufficient to establish a complete defense." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Mouton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2019) (citation omitted). "'In order to make a sufficient showing of a meritorious defense ... the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense.'" *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (quotation omitted). While this is a low threshold, the defendant "must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) (citation omitted).

Here, contrary to Plaintiffs' assertions, Defendants have met their burden of demonstrating a meritorious defense. The majority of the factual allegations in the complaint contend that Defendants failed to provide proper services for dealing with R.N.'s disabilities and failed to develop and implement an appropriate Individual Education Plan ("IEP"). In support of their motion, Defendants submitted an affidavit from Tina Pawloski, who is the Director of Special Programs and Services for the School District. *See* Dkt. No. 14-7. In this affidavit, Defendants explain that, they have been diligently working with Plaintiffs to develop a proper IEP for R.N., beginning in the summer of 2023. In fact, the Committee on Special Education ("CSE") met with Plaintiffs at least eight times over the course of the year – compared to the most common protocol of having one CSE meeting per student per year. At these meetings, the parties discussed R.N.'s evolving diagnosis and plans for her, because at the time she was admitted to the District in September 2023, neither the District nor the parents had any idea of the extent or degree to which R.N. had difficulties adjusting or the true nature and extent of her disability. *See id.* Ms. Pawloski also notes that there were an additional fifteen-to-twenty meetings between administrative staff and Plaintiffs regarding R.N.'s behavior. In each instance, Plaintiffs were advised of their rights and at no time did Plaintiffs file an objection to disciplinary action taken, nor did they file an objection to any of the plans laid out in the District's IEP. *See id.* These facts are sufficient to establish a meritorious defense as to Plaintiffs' federal claims.

The complaint also includes state-law claims for alleged failure to train or supervise and the negligent infliction of emotional distress, which generally relate to the use of physical restraints on R.N.[2] According to Ms. Pawloski, the School District provides annual training for

---

[2] The Court notes that the parties' disagree about whether Plaintiffs' state-law claims are barred by General Municipal Law §§ 50-i and 50-h based on the fact that this action was

(continued...)

7

all staff regarding the use of physical restraints and corporal punishment consistent with the law. New York State law does not entirely prohibit physical contact with students, particularly when there is a need for intervention by staff members when a student has engaged in dangerous or highly inappropriate conduct. Ms. Pawloski has concluded that the only use of physical restraint occurred in response to dangerous activity and Plaintiffs have not alleged that R.N. was ever injured or suffered any other harm.

Accordingly, the Court finds that all three factors weigh in favor of granting Defendants' motion to vacate.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' cross-motion to vacate the entry of default (Dkt. No. 14) is **GRANTED**; and the Court further

---

²(...continued) commenced prior to the Section 50-h examination taking place. Since the complaint in this action was filed more than thirty days after the notice of claim, and because the 50-h notice of examination was issued after the complaint in this matter was filed, it appears that Plaintiffs' state-law claims are not barred by the General Municipal Law. *See Alouette Fashions v. Consol. Ed. Co. of N.Y.*, 119 A.D.2d 481, 485 (1st Dep't 1986) (holding that "[a] reading of sections 50-h and 50-1 in tandem indicates that, where the city's demand for examination has not yet been served, a claimant may properly institute an action against the city more than 30 days and less than 90 days after the filing of the notice of claim even though no Comptroller's hearing has been held. ... Of course, if the demand has been served within the 90-day period at a time when no action has yet been instituted, the claimant may not thereafter commence an action until the demand has been complied with"). The conclusion, however, likely stems from the fact that the notice of examination was sent to Plaintiffs on July 8, 2024, and although the complaint in this case was filed on June 24, 2024, the summons and complaint were not served on Defendants until July 9, 2024. Regardless of whether the claims are barred by the General Municipal Law, as discussed above, the Court finds that Defendants have set forth facts demonstrating a meritorious defense.

**ORDERS** that Plaintiffs' motion for default judgment (Dkt. No. 11) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court's entry of default (Dkt. No. 9) is **VACATED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 19, 2024
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge